UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2025-CR-80002-Cannon/McCabe

18 U.S.C. § 1343
18 U.S.C. § 982(a)(2)

UNITED STATES OF AMERICA

v.

JONAS JANVIER,

Defendant.
_____/

FILED BY SW D.C.

Jan 7, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Small Business Administration

1. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses by assisting in the economy recovery of communities after disasters.

### The Economic Injury Disaster Loan Program

2. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that existed before the COVID-19 pandemic to provide low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

4. In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, this period was the 12-month period preceding January 31, 2020. The applicant was further required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

5. EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor. The amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the SBA. EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

6. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by

the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the U.S. Treasury using computer servers located in the state of Virginia.

## The Paycheck Protection Program

7. Another source of relief provided through the CARES Act was the authorization of forgivable loans to businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

8. The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses were required to use PPP loan proceeds on payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

9. The amount of a PPP loan that a small business was entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

10. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

11. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own funds. While a participating lender issued the PPP loan, the loan was 100% guaranteed by the SBA.

### Relevant Individual and Entities

12. The Defendant **JONAS JANVIER** was a resident of Palm Beach County, Florida.

13. Janvier Holdings, LLC ("Janvier Holdings") was a corporation controlled by the Defendant with a principal address in Lake Worth, Florida.

14. Global Voice Direct, LLC ("Global Voice Direct") was a corporation controlled by the Defendant with a principal address in West Palm Beach, Florida.

15. Horizon Capital Finance Corporation ("Horizon") was a corporation controlled by the Defendant with a principal address in Lake Worth, Florida.

16. Bora Bora Soleil, Inc. ("Bora Bora Soleil") was a corporation controlled by the Defendant with a principal address in Lake Worth, Florida.

### COUNT 1
### Wire Fraud
### (18 U.S.C. § 1343)

1. The General Allegations section of this Information is re-alleged and incorporated by reference as though fully set forth herein.

2. From on or about June 19, 2020, and continuing through on or about February 23, 2021, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**JONAS JANVIER,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and

4

promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 2.

## Purpose of the Scheme and Artifice

It was the purpose of the scheme and artifice for the Defendant to unlawfully enrich himself by, among other things, submitting and causing the submission of false and fraudulent applications for EIDLs and PPP loans and diverting the proceeds of those loans for the personal use and benefit of the Defendant and to further the scheme and artifice.

## The Scheme and Artifice

The manner and means by which **JONAS JANVIER** sought to accomplish the purpose of the scheme and artifice included, among others, the following:

1. On or about June 19, 2020, the defendant submitted and caused to be submitted an EIDL application on behalf of Horizon. In the EIDL application, the Defendant falsely stated Horizon's gross revenues for the twelve months prior to the date of the disaster (January 31, 2020) were $2,560,577.00. He also falsely stated that Horizon had 22 employees as of January 31, 2020.

2. As a result of the false and fraudulent EIDL application, the SBA approved and funded the EIDL for Horizon in the amount of $150,000. On June 29, 2020, the SBA transferred, through interstate wires, $149,900 to a Flagler bank account in Florida controlled by the Defendant.

3. On or about June 24, 2020, the Defendant submitted and caused to be submitted an EIDL application on behalf of Bora Bora Soleil. In the EIDL application, the Defendant falsely stated Bora Bora Soleil's gross revenues for the twelve months prior to the date of the disaster

(January 31, 2020) were $1,294,737.00. He also falsely stated that Bora Bora Soliel had 17 employees as of January 31, 2020.

4. As a result of the false and fraudulent EIDL application, the SBA approved and funded the EIDL for Bora Bora Soleil in the amount of $150,000. On July 8, 2020, the SBA transferred, through interstate wires, $149,900 to a Flagler bank account in Florida controlled by the Defendant.

5. On or about May 6, 2020, the Defendant filed a PPP loan application on behalf of Janvier Holding (*sic*), LLC, seeking a PPP loan in the amount of approximately $316,657.68. In the PPP loan application, the Defendant falsely stated Janvier Holding, LLC's monthly payroll was $126,663.07 and that it had nine employees.

6. As a result of the false and fraudulent PPP application, Flagler Bank approved and funded the PPP loan for Janvier Holding, LLC. On May 14, 2020, Flagler Bank transferred approximately $294,560 to a bank account in Florida controlled by the Defendant.

7. On or about February 1, 2021, the Defendant signed another PPP loan application for Janvier Holdings, LLC, seeking a PPP loan in the amount of $170,414.93. In the PPP loan application, the Defendant falsely stated Janvier Holdings, LLC's monthly payroll was $68,165.97 and that it had eleven employees.

8. As a result of the false and fraudulent PPP application, Flagler Bank approved and funded the PPP loan for Janvier Holding, LLC. On February 23, 2021, Flagler Bank transferred approximately $170,412 to a bank account in Florida controlled by the Defendant.

9. The Defendant spent much of the EIDL and PPP loan proceeds for his personal use and benefit, not for payroll costs, interest on mortgages, rent, or utilities.

## USE OF WIRES

10. On or about June 19, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, **JONAS JANVIER**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, that is, an electronic application from the Southern District of Florida to outside of the State of Florida, for an EIDL, in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendant, **JONAS JANVIER**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of a violation of Title 18, United States Code, Section 1343 affecting a financial institution, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from, proceeds obtained directly or indirectly, as a result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2).

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and 982(a)(2), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

*[signature: Anthony W. Lacosta for]*
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

*[signature]*

SHANNON SHAW
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 2025-CR-80002-Cannon/McCabe

v.

JONAS JANVIER,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendant.

**Superseding Case Information:**
New Defendant(s) (Yes or No)_____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☒ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take  5  days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☒ 0 to 5 days
   II  ☐ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☐ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge_____ Case No._____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes,_____ Magistrate Case No._____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge_____ Case No._____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Mills Maynard)? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
SHANNON SHAW
Assistant United States Attorney
FL Bar No.        92806

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

Defendant's Name: __JONAS JANVIER__

Case No: 2025-CR-80002-Cannon/McCabe

Count # 1:

Wire Fraud

18 U.S.C. § 1343

* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000 fine or twice the value of the gross gain or loss, whichever is greater

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 2025-CR-80002-Cannon/McCabe

### BOND RECOMMENDATION

DEFENDANT: JONAS JANVIER

$100,000 personal surety bond
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   SHANNON SHAW

Last Known Address: 1671 Woodland Ave.

West Palm Beach, FL 33415

What Facility: _____

Agent(s): Stephan Persad
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (OTHER)
Secret Service

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 2025-CR-80002-Cannon/McCabe |
| JONAS JANVIER, | ) | |
| | ) | |
| Defendant | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

DAVID TARRAS
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*